**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | | |
|---|---|---|
| ANTHONY SCHIAVONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-140 JVB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Anthony Schiavone seeks judicial review of the final decision of Defendant

Michael J. Astrue, Commissioner of Social Security, who denied his application for

Supplemental Security Income Benefits under the Social Security Act. For the following reasons,

the Court AFFIRMS the Commissioner's decision.


**A**. **Procedural Background**

On April 8, 2004, and May 21, 2007, Plaintiff filed applications for Supplemental Security

Income Benefits ("SSI"), alleging disability from hepatitis C, pancreatitis, depression,

degenerative disc disease, and hypertension since September 2002. Plaintiff's initial application

was denied on August 9, 2004 (R. 92). Plaintiff's subsequent application for reconsideration was

also denied on September 20, 2004, prompting Plaintiff's request for a hearing before

Administrative Law Judge Steven J. Neary ("ALJ") (R. 824).

On September 29, 2006, the ALJ determined that Plaintiff was not disabled under the Act

and thus was not entitled to SSI benefits (R. 101). Plaintiff appealed to the Appeals Council,

which ultimately vacated the ALJ's decision and remanded the case for further consideration of Plaintiff's consolidated SSI application (R. 68–70). The ALJ held a supplemental hearing on June 12, 2008 (R. 20). On March 24, 2009, the ALJ again found that Plaintiff was not disabled under the Act and thus was not entitled to benefits (R. 34). The ALJ found as follows:

1. The claimant has not engaged in substantial gainful activity since April 8, 2004, the application date.

2. The claimant has the following severe impairments: hepatitis, pancreatitis, degenerative disc disease, alcohol abuse, depression and/or bipolar disorder, and anxiety.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations:  the claimant cannot climb, but he can occasionally kneel, crouch, and crawl; the claimant must avoid concentrated exposure to temperature extremes, vibration, and pulmonary irritants; the claimant is limited to the performance of simple, repetitive tasks.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on June 4, 1966 and was 37 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

(R. 22–33)

The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on February 23, 2010 (R. 5–7). Plaintiff then filed this appeal in the United States District Court for the Northern District of Indiana.

## B. Facts

### (1) *Plaintiff's Background*

Plaintiff was born on June 4, 1966.  Plaintiff has completed his GED and is able to communicate in English (R. 33). Plaintiff had past relevant work experience as a forklift driver, welder, and landscape laborer (R. 205–06, 254–55). His last full-time permanent job was in 2004 as a forklift driver for a paper company (R. 638).

At home, Plaintiff indicated that he is currently living with a friend (his ex-wife) (R. 639). He cooks his own meals but does no laundry and does few household chores (R. 639). He shops with his roommate once a month (R. 639). Plaintiff's daily living activities include caring for personal hygiene, going to the library, renting and watching movies, going for a ride in the car, visiting his niece, and cooking occasionally (R. 830–31).

**(2)** *Medical Evidence*

(a) *Physical Issues*

In April 2004, Plaintiff was hospitalized for complaints of acute abdominal pain following several days of heavy drinking (R. 379). A CT scan revealed evidence of acute pancreatitis with a small amount of peripancreatic fluid (R. 380). Plaintiff's physician diagnosed Plaintiff with "pretty classic alcoholic pancreatitis" (R. 380). The physician also noted that Plaintiff had a history of chronic active hepatitis C (R. 379).

In March 2005, Plaintiff again visited the hospital with complaints of upper abdominal pain (R. 466). Plaintiff reported that he had stopped drinking about three months earlier, but he also stated that he had recently restarted drinking (R. 466). Plaintiff's physical examination revealed some tenderness in the abdominal area but was otherwise normal (R. 470). An ultrasound of Plaintiff's abdomen was normal (R. 470).

A CT scan taken of Plaintiff's abdomen in November 2005 revealed a small, unchanged pancreatic cyst, but was otherwise unremarkable (R. 504). A pelvic CT performed that same day was also normal (R. 504).

Plaintiff claims to have degenerative back pain dating back to 2002. An MRI from April 16, 2006, showed severe degenerative changes at the L3-L4 with facet arthropathy and mild spinal canal stenosis (R. 794).

In June 2006, Plaintiff had the following tests performed: an abdominal CT scan, pelvic CT scan, and ERPC. All were essentially normal with no evidence of acute or chronic pancreatitis (R. 596, 597, 599). An x-ray taken of Plaintiff's knee on June 27, 2006, showed very mild degenerative changes (R. 548). A physical exam revealed that Plaintiff had limited range of motion of 0–130 degrees with pain (R. 548).

In August 2006, Plaintiff went to the hospital complaining of lower abdominal pain (R. 591). Plaintiff reported that he had been drinking heavily over the previous two weeks (R. 591). Plaintiff was prescribed Ultram, a narcotic-like pain reliever, and he was directed to return to the emergency room if his condition worsened (R. 590).

On September 8, 2006, a left knee arthogram performed on Plaintiff was essentially normal (R. 549). On September 12, 2006, Plaintiff attended a follow-up appointment with Dr. James Hartson who recorded that the MRI findings taken on September 8, 2006, did not show any significant abnormalities (R. 547). Dr. Hartson noted that, if anything, Plaintiff had very trace changes in the posterior horn of the medical meniscus, but this did not meet the criteria for a tear. Dr. Hartson recommended physical therapy.

Plaintiff returned to the hospital in November 2006 with complaints of abdominal pain (R. 585). Again, Plaintiff reported he had been drinking heavily over the previous two days before experiencing abdominal pain (R. 584). According to a treatment note, a staff physician also informed Plaintiff that Dr. Chawla had directed Plaintiff to avoid narcotic pain medications (R. 584).

In July 2007, a CT scan of Plaintiff's abdomen showed that Plaintiff's pancreas was unremarkable (R. 682).

In August 2007, Dr. William Holland conducted a consultative physical examination on Plaintiff (R. 620–21). Plaintiff reported that, although he was a former heavy drinker, he had not had any alcohol for two or more years (R. 620). Plaintiff reported that he had not had any episodes of pancreatitis over the last year (R. 620). Dr. Holland stated that Plaintiff was able to get out of a chair and get on and off the examination table without difficulty (R. 621). He noted that Plaintiff walked with a normal gait and was also able to go from a supine position to sitting

position without difficulty. Plaintiff could squat and stand with minimal difficulty. Dr. Holland reported that Plaintiff had full range of motion in his arms, full range of motion in his right leg and slightly decreased range of motion in his left leg. Dr. Holland diagnosed Plaintiff with hypertension by history, pancreatitis, hepatitis C, and lower back pain.

With this information, Dr. Holland indicated that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. He also opined that Plaintiff could stand and/or walk for 6–8 hours in an 8-hour workday, and sit for 6–8 hours in an 8-hour workday (R. 622–23). Dr. Holland indicated that Plaintiff could frequently climb, occasionally stoop, kneel, crouch and crawl (R. 623).

With regard to Plaintiff's back condition, an x-ray from August 14, 2007, showed moderate degenerative disc disease and levoconvex scoliosis at the L3-L4 disc level (R. 626).

On August 24, 2007, Dr. Thomas Glodek, a state agency reviewing physician, opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 4 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday (R. 630–31). Dr. Glodek indicated that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (R. 631). He further opined that Plaintiff should avoid activities involving the risks of heavy machinery and heights (R. 633).

On October 10, 2007, Dr. Singh, a state agency physician, reported that the April 2006 MRI showed severe degenerative changes at the L3-L4 intervertebral disc space (R. 708). Dr. Singh also reported that that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and that Plaintiff could stand and or walk for 2 hours and sit for 6 hours in an 8-hour workday with normal breaks (R. 708).

6

On November 30, 2007, Plaintiff visited the emergency room complaining of leg swelling (R. 733). At this visit, Plaintiff reported "chronic mild abdominal pain." An abdominal ultrasound performed that day showed some spleen enlargement but was otherwise negative (R. 733).

In February 2008, Dr. Thomas Disney, a state agency reviewing physician, opined that Plaintiff was capable of standing and walking for 3 to 5 hours per 8-hour workday (R. 716–17). He also explained that Plaintiff could frequently balance and stoop and could occasionally climb, kneel, crouch, and crawl (R. 717). In his report, Dr. Disney questioned Plaintiff's credibility because the medical evidence in file did not support the extent of Plaintiff's allegations (R. 720).

On December 19, 2008, an MRI of Plaintiff's back showed "progressively worsening disc disease combined with increased narrowing of the L3-L4 intervertebral disc space" (R. 814). In addition, herniation was now present at L3-L4, which was causing moderate stenosis and nerve encroachment. A bone scan preformed that same day showed "nonspecific degenerative uptake" in claimant's knees, ankles, left great toe, and thoracic spine (R. 815).

(c) *Mental Health and Ability*

In July 2004, Plaintiff had a consultative examination where Plaintiff reported memory loss; however, testing showed Plaintiff's memory to be average (R. 232).

In October 2004, Plaintiff was evaluated at the Swanson Center for polysubstance abuse and then again in November 2004 for associated depressive symptoms (R. 526–28). On the basis of his evaluation, Plaintiff was recommended to begin individual therapy with David Word, a social worker from the Swanson Center (R. 528).

In October 2005, Word completed an Annual Clinical Assessment on Plaintiff (R. 518–19). The assessment indicated Plaintiff had been seeking treatment for recurrent episodes of depression associated with an extensive history of polysubstance abuse and chronic alcoholism (R. 518). Word diagnosed Plaintiff with Alcohol Dependence but otherwise indicated that Plaintiff responded rather well to individual therapy sessions. Additionally, Word reported no episodes of violence, anger, or depressed mood (R. 518). He explained that Plaintiff would be eligible for discharge once he had gone three months without using polysubstances or alcohol to self-medicate (R. 519).

In July 2006, Plaintiff reported experiencing some increased stress, but he continued to be stable.  Plaintiff did not maintain treatment at the Swanson Center after this point and was ultimately discharged on December 13, 2006, due to lack of follow through (R. 600).

In May 2007, while living in Arizona, Plaintiff underwent an assessment at a Jewish Family and Children's Services Center. Plaintiff reported that he was depressed and that he was experiencing panic attacks (R. 661).

While Plaintiff's formal mental health care appears to have been limited to that received at the Swanson Center and primarily related to substance abuse issues, the evidence shows that Plaintiff has been prescribed anti-depressant medication and/or Xanax at various points throughout the relevant period (R. 819).

On August 25, 2007, Dr. Wayne General, Ph.D. performed a consultative psychological examination on Plaintiff. At the examination, Plaintiff claimed that he had been experiencing depression "pretty much all [his] life" (R. 637). He also related that he experienced periods of highs and low and that his depression was exacerbated by stress. The consultative examination

8

showed that Plaintiff's ability to sustain visual attention and concentration was in the average range, as was his "working memory" (R. 642).

Pursuant to his examination, Dr. General diagnosed bipolar disorder, panic disorder with agoraphobia, and alcohol and polysubstance dependence.  He found Plaintiff's alcohol and polysubstance abuse to be in remission. Dr. General noted that the Plaintiff's ability to perform work-related tasks was weak in terms of cognitive functions such as attention, concentration, processing speed, and short-term memory (R. 643). However, Dr. General noted that these deficits had not interfered with Plaintiff's work capacity in the past; rather, he opined that "now that physical concerns have become an issue," intellectual weakness were more important (R. 643).

Pursuant to Dr. General's examination combined with its own determinations, the State Agency found that, while Plaintiff's impairments were severe, he retained the capacity to perform simple, repetitive tasks. Specifically, Dr. Brady Dalton, Psy.D., the state agency reviewing psychologist, determined that Plaintiff's limitations in terms of activities of daily living and social functioning were only mild. He found that Plaintiff was moderately limited in terms of his ability to maintain concentration, persistence, and pace (R. 665). Dr. Dalton also opined that Plaintiff has a fair ability to respond to basic work setting changes and has a fair to adequate ability to organize himself (R. 665).


### (3) *Plaintiff's Testimony*

At the first administrative hearing, Plaintiff testified that he was unable to work due to symptoms of constant pain in his abdomen, back, knees, and fatigue (R. 828). Plaintiff stated that he was able to stand for 10 to 15 minutes, walk for a block to a block and a half, and sit for about

an hour (R. 829–30). He stated that he could sit longer than he could stand, but he could not be in the same position for too long (R. 830). Plaintiff testified that he could probably lift about 15 to 20 pounds (R. 830). In terms of substance abuse, Plaintiff testified that he had not used drugs in 15 months and that he had not used alcohol in 12 months.

At the second administrative hearing, Plaintiff testified that his symptoms had gotten worse since his first hearing (R. 838). He reported that in March 2007, he had problems with his liver and pancreas (R. 837). When asked how long he could sit, Plaintiff responded, "Not very long" (R. 838). Plaintiff complained that he experienced leg swelling with walking (R. 838). Plaintiff claimed that he had not left the house in about a month except to see the doctor (R. 838). He stated that the pain in his abdomen was constant and that his fatigue caused him to lie down during the day (R. 840). Plaintiff testified that taking Xanax and Risperdal helps with his anxiety and mood swings (R. 841). Plaintiff also reported that he stopped drinking in July 2006 after being hospitalized for pancreatitis (R. 837). In addition to testifying to problems with memory, focus, concentration, and mood swings, Plaintiff reported that he had suicidal thoughts (R. 839).

### (4) *Vocational Expert's Testimony*

At the second administrative hearing, the ALJ presented Vocational Expert Donna Whitcomb with the following vocational profile: an individual 41 years old, with a GED, who could perform work at the light exertional level with the exception that he could not climb, kneel, crouch or crawl more than occasionally, could not have concentrated exposure to extremes of temperature, vibration or pulmonary irritants such as fumes, dusts, odors, or gases, and was limited to simple, unskilled work (R. 852).

The vocational expert testified that the hypothetical person would not be capable of performing any of Plaintiff's past work (R. 852). However, she testified that the person would be capable of performing the following available jobs: 280 jobs as a production assembler, 524 jobs as a packing line worker, and 654 jobs as a ticketer (R. 852). The vocational expert also testified that a person could not sustain work if he missed three days per month, and if the person had anger outbursts two to three times every couple of months, he would be in danger of discipline from his employer (R. 852).

**(5) *ALJ's Decision***

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ determined that Plaintiff had the following severe impairments: hepatitis, pancreatitis, degenerative disc disease, alcohol abuse, depression and/or bipolar disorder, and anxiety (R. 22).

Plaintiff's conditions, however, did not meet or equal any in the Listing of Impairments (R. 23). The ALJ indicated that the record did not support the conclusion that Plaintiff's physical impairments met or medically equaled a listing, including Listings 1.04 (Disorders of the spine) or Listing 5.05 (Chronic liver disease) (R. 23). Moreover, Plaintiff's mental impairments do not meet or medically equal the criteria of listings 12.04, 12.05 and 12.09 nor do they meet the "paragraph B" criteria. The ALJ also found that Plaintiff has mild restriction in activities of daily living and social functioning. With regard to concentration, persistence or pace, the ALJ found that Plaintiff had moderate difficulties (R. 24).

Overall, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 416.967, except that Plaintiff could not climb, but can occasionally kneel, crouch, and crawl (R. 25). ALJ also found that Plaintiff must avoid concentrated exposure to temperature extremes, vibration and pulmonary irritants and that Plaintiff is limited to simple, repetitive tasks (R. 25).  Because these limitations still allowed performance of significant numbers of regional jobs, the ALJ determined Plaintiff was not disabled under the Social Security Act (R. 34).

After considering the entire record, although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely consistent or fully supported by the evidence of record to the extent they were inconsistent with the ALJ's RFC assessment.

Specifically, the ALJ stated that he gave significant weight to the testimony of Dr. Earnest Mond, who indicated that Plaintiff's allegations of pain were not fully supported by objective findings. In terms of knee pain, Dr. Mond noted that an anthrogram and MRI performed in September 2006 were essentially normal (R. 846).  As to abdominal pain, Dr. Mond indicated that a CT scan in July 2007 had shown that claimant's pancreas was unremarkable (R. 846). Further, Dr. Mond noted that Plaintiff's allegations of pain were not fully supported by the record (R. 845). For example, Dr. Mond noted that, whereas Plaintiff testified that he stopped drinking in July 2006 (R. 837), his medical records indicated that he continued to drink after July 2006 (R. 845–46). Dr. Mond also questioned the veracity of Plaintiff's allegations of having severe pain symptoms (R. 846). Dr. Mond noted that the record indicated that nurses had observed Plaintiff to be comfortable when he believed he was not being directly observed;

however, once the nurses entered the room, Plaintiff then displayed pain behaviors and complained of severe pain symptoms (R. 542–43, 846). As to back pain, although Dr. Mond acknowledged that a referenced April 2006 MRI was not in the record he reviewed, this MRI had been available to the State Agency consultants in Arizona at the time of the determination made on February 22, 2008, (R. 715) and a copy of the MRI was provided and admitted into evidence after the hearing (R. 849).

Overall, Dr. Mond opined that Plaintiff could perform medium work.  In terms of Plaintiff's credibility, Dr. Mond noted that the evidence showed drug-seeking behavior, pain exaggeration, and alcohol use beyond the time that Plaintiff testified that he had ceased drinking.  Dr. Mond opined that these factors tended to undermine Plaintiff's general credibility. Dr. Mond noted that he relied heavily on Dr. Holland's findings in determining that Plaintiff could perform medium work (R. 848).

In addition to Dr. Mond's opinion that plaintiff could perform medium work, the ALJ also relied on the opinions of state agency doctor, Dr. Thomas Disney. Although Dr. Disney opined that Plaintiff could stand for only 3 to 5 hours per 8-hour workday (R. 717), the ALJ incorporated all of Dr. Disney's other findings into his RFC assessment.

With regard to Plaintiff's back pain, the ALJ noted that the record reflects an apparent recent increase in back pain, yet he found that Plaintiff's back impairment was not disabling (R. 814). Specifically, the ALJ explained that, "if [Plaintiff's] condition does not improve, a disabling impairment may result. However, at present, the evidence simply fails to support that the [Plaintiff's] apparent current level of impairment has existed for the requisite 12-month durational period, or that it will remain unchanged for at least 12 months" (R. 30).

As to Plaintiff's mental RFC, the ALJ indicated that his opinion that Plaintiff could perform simple, repetitive tasks was consistent with the opinions of the state agency reviewing psychologists. The ALJ explicitly noted that he adopted the opinion of Dr. Dalton. In Section III of the MRFC Assessment Form, Dr. Dalton narratively described that Plaintiff's limitations in terms of activities of daily living and social functioning were mild, whereas Plaintiff was moderately limited in his ability to maintain concentration, persistence, and pace (R. 649). Further, the ALJ explicitly noted that he did not give great weight to the observations of Dr. General to the extent that they were inconsistent with the record (R. 32).

**C.  Standard of Review**

This Court has authority to review Social Security Act claim decision under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the proper legal standard and is supported by substantial evidence. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000). The Court will not decide facts anew, reweigh the evidence, or substitute its own judgment to decide whether a claimant is or is not disabled. *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). The Commissioner's decision must be upheld if there is substantial evidence to support it, even if substantial evidence would support an opposite conclusion. *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir. 1989).

**D.  Disability Standard**

To qualify for Disability Insurance Benefits the claimant must establish that he or she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a

five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful

claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment
> is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is
> not able to perform his past relevant work; and (5) he is unable to perform any
> other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads either

to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v.

Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three

stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof

lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford

v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## E. Analysis

Plaintiff claims that the ALJ erred by finding that he was not disabled within the meaning of

the Social Security Act and by denying Supplemental Security Income Benefits. Plaintiff asserts

the following four arguments in support of his claim: (1) the ALJ's RFC finding is not supported

by substantial evidence because he mischaracterized the findings of the State Agency reviewing

doctors and did not provide an independent basis for his RFC assessment; (2) the ALJ did not

properly evaluate the limitations caused by Plaintiff's mental impairments; (3) the ALJ did not

properly evaluate whether Plaintiff's back impairment had lasted or could be expected to last for

12 months; (4) the ALJ failed to properly evaluate Plaintiff's obesity in violation of SSR 02-1p.

The Court will address each of Plaintiff arguments in turn.

**(1)** *Substantial Evidence Supports the ALJ's Residual Functional Capacity Finding.*

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence because the ALJ mischaracterized Dr. Disney's opinion and did not provide an independent basis for his finding.

An "ALJ is not required to address every piece of evidence or testimony presented." *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). Rather, the ALJ's RFC determination must provide a "logical bridge" between the evidence and his conclusion. *Clifford*, 227 F.3d at 872. In doing so, the ALJ must provide a narrative discussion describing how the medical evidence of record supports the RFC finding. SSR 96-8p.

In support of his contention that the ALJ's RFC assessment is not supported by substantial evidence, Plaintiff argues that the ALJ's general finding that Plaintiff was capable of performing light work did not account for Dr. Disney's specific opinion that Plaintiff should be limited to standing and walking from 3 to 5 hours per day, which is below the 6-hour minimum required to perform work at the light exertional level. Plaintiff contends that a limitation of light unskilled work is inconsistent with their findings. This Court disagrees.

Significantly, the ALJ did not rely solely on Dr. Disney's opinion in his determination. In his decision, the ALJ stated that he attributed significant weight to the opinion of Dr. Ernest Mond, the state agency physician, who opined that Plaintiff could perform the requirements of medium work (R. 848).

The ALJ's decision also reflects that the ALJ gave weight to the opinions and findings of Dr. Holland, the consultative examiner, who expressed that Plaintiff was able to stand and/or walk for 6 hours in an 8-hour workday (R. 28). Consistent with a limitation of light unskilled work, Dr. Holland also opined that Plaintiff could frequently climb, occasionally stoop, kneel, crouch,

and crawl. *See* SSR 85-15 (stating that the light occupational base is virtually intact if a person can stoop, kneel, and crouch occasionally and that restrictions on climbing and balancing do not ordinarily have a significant impact on the light occupational base).

Dr. Mond's and Dr. Holland's opinions are also consistent with the objective medical evidence, indicating that Plaintiff could walk with a normal gait and perform various physical maneuvers with little difficulty. This evidence also supports the ALJ's findings that Plaintiff could perform the requirements of light work (R. 27–29).

Plaintiff additionally argues that the ALJ erred by not explicitly discussing each state agency reviewing physician opinion of record. The ALJ is required to consider, evaluate and explain the weight given to all opinions of state agency doctors in the record. SSR 96-p; 20 CFR 416.927(f). Plaintiff assigns error to the fact that, here, the ALJ did not discuss two state agency opinions in the record, specifically, the opinions of Dr. Thomas Glodek and Dr. Nisha Singh. However, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.3d 1055, 1057 (7th Cir. 1989).

In the present case, no error may be assigned to the ALJ's failure to explicitly discuss the opinions of Dr. Glodek and Dr. Singh because the ALJ effectively incorporated Dr. Glodek's and Dr. Singh's opinions into his RFC assessment through considering Dr. Disney's opinions. Specifically, with the exception of Dr. Disney's opinion about Plaintiff's ability to stand and/or walk, the ALJ explicitly considered and relied substantially on Dr. Disney's opinion in formulating his RFC finding. Dr. Glodek's opinion differed from Dr. Disney's opinion in only a few minor regards. Dr. Glodek's opinions are otherwise nearly identical to Dr. Disney's opinions (R. 29). First, Dr. Glodek opined that Plaintiff was capable of standing and/or walking for about

4 hours per 8-hour workday, whereas Dr. Disney opined that Plaintiff was capable of walking for 3 to 5 hours per 8-hour workday (R. 630–31, 716–17). Although both doctors suggested that Plaintiff's ability to stand or walk was slightly reduced below what was generally required to perform the full range of light work, as discussed above, the ALJ also relied on the opinions of Dr. Mond, Dr. Holland, and the objective medical evidence in determining that Plaintiff was capable of performing the requirements of light work (R. 28–29).

Next, Dr. Glodek opined that Plaintiff could only occasionally balance and stoop whereas Dr. Disney opined that Plaintiff could frequently balance and stoop (R. 631, 717). However, according to the Dictionary of Occupational Titles, none of the jobs identified by the vocational expert involved more than occasional balancing or stooping. Finally, Dr. Singh's opinion affirmed the findings of Dr. Disney (R. 708). Both Dr. Disney and Dr. Singh suggested that Plaintiff could frequently lift 10 pounds, could stand and/or walk slightly less than the required amount to perform light work, and could sit with normal breaks for a total of 6 hours in an 8-hour workday (R. 708, 716). Consequently, the ALJ appropriately considered Dr. Singh's opinions and Dr. Glodek's opinions when evaluating Dr. Disney's opinion. Any failure to explicitly mention the opinions of Dr. Glodek and Dr. Singh was harmless.

Plaintiff also asserts that the ALJ's RFC finding was not supported by substantial evidence because Dr. Mond was unable to review the results of an MRI taken of Plaintiff's lumbar spine in 2006 (R. 794). However, Dr. Mond was aware of the relevant diagnostic findings pertaining to Plaintiff's degenerative disc disease. Specifically, Dr. Mond had the opportunity to review subsequent diagnostic studies revealing evidence of Plaintiff's degenerative disc disease (R. 626, 846–47). Furthermore, the ALJ's RFC assessment also accounted for Dr. Holland's opinion. Dr. Holland was aware that Plaintiff had undergone an MRI that revealed degenerative disc disease

18

but also indicated in his clinical examination that Plaintiff was able to walk with a normal gait and had no difficulty performing numerous different physical maneuvers (R. 620–21).

Accordingly, the ALJ built a "logical bridge" between the evidence and his conclusion that Plaintiff could perform light unskilled work. Moreover, the ALJ's RFC finding is supported by substantial evidence, and, therefore, must be affirmed.

**(2)** *Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Mental Impairments.*

Plaintiff next argues that the ALJ failed to properly consider the opinions of state agency reviewing psychologist, Dr. Dalton, in rendering his mental RFC assessment ("MRFC"). Social Security Ruling 85-16 requires that, "all limits on work-related activities resulting from the mental impairment must be described in the mental RFC assessment."

Plaintiff argues that the ALJ erred by not specifically addressing various moderate limitations identified in Section I of the MRFC Assessment form completed by Dr. Dalton. However, Dr. Dalton provided a comprehensive narrative discussing his finding that Plaintiff was capable of performing simple, repetitive tasks that accounted for his determinations from Section I in Section III of the MRFC Assessment form (R. 665). Specifically, Dr. Dalton addressed how Plaintiff's mental impairments would limit him regarding his understanding and memory, sustained attention and task persistence, social interaction and adaptation, and ultimately found that, even in spite of his mental limitations, Plaintiff is capable of performing "simple, unskilled and repetitive work" (R. 665). Contrary to Plaintiff's argument, Dr. Dalton's opinions about Plaintiff's MRFC did not consist of *both* a limitation to Dr. Dalton's findings presented on Section III that Plaintiff was limited to "simple, unskilled and repetitive work" *and* the moderate limitations contained in Section I of the MRFC Assessment form. Instead, Dr. Dalton's narrative opinions on Section III represented his ultimate conclusion about Plaintiff's work capabilities

that included the various limitations noted in Section I of the MRFC assessment form. As a result, the ALJ did not mischaracterize Dr. Dalton's opinion in determining that Plaintiff is limited to performing simple, repetitive tasks and the record supports such a finding (R. 32).

Plaintiff also contends that the ALJ did not properly evaluate the opinion of Dr. General, a consultative psychologist examiner. Dr. General diagnosed Plaintiff with bipolar disorder, panic disorder with agoraphobia, and alcohol and polysubstance dependence (R. 643). Dr. General noted that Plaintiff's ability to perform work-related tasks was weak in terms of cognitive functions such as attention, concentration, processing speed, and short-term memory (R. 643). However, he noted that these deficits had not interfered with Plaintiff's work capacity in the past; rather, he opined that, "now that his physical concerns have become an issue, his intellectual weaknesses have become more important as limiting factors." *Id.*

In his proper discretion, the ALJ determined not to accord Dr. General's observations great weight because his determinations were "questionable given other evidence" and were not supported by the record (R. 32). In support of his conclusion, the ALJ stated that Plaintiff's indication that he has had a lifetime of poor health cast doubt on Dr. General's opinion that physical issues had somehow recently exacerbated the claimant's cognitive limitations (R. 32). The ALJ also noted that, as evidenced by a consultative physical examination performed the same month as Dr. General's consultation, Plaintiff's physical capacity was nearly full (R. 620). Moreover, the ALJ found Dr. General's diagnoses of bipolar disorder and panic disorder with agoraphobia to be new (R. 32). In his discretion, the ALJ made a determination of how much weight to give the opinion of Dr. General. This Court is not to re-weigh such determinations when reviewing the record.

**(3)** *The ALJ Properly Concluded that Plaintiff Was Not Disabled As a Result of His Back Impairment.*

Plaintiff contends that the ALJ did not properly evaluate whether his back impairment had lasted or could be expected to last for 12 consecutive months.

For a person to be found disabled by the Social Security Administration's standards, the claimant must have an impairment that has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A); SSR 82-52. If a claimant has an impairment that has not lasted for 12 months, but otherwise meets the administration's standard for disability, the ALJ must determine whether the impairment can reasonably be expected to last 12 months, or whether there "is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform basic work-related functions." SSR 82-52. If the ALJ denies a claim because of insufficient duration, the ALJ must state clearly in the decision that there is expected to be sufficient restoration of function within 12 months of onset. *Id.*

Plaintiff alleges that the ALJ violated Social Security Ruling 82-52 because he did not clearly state that there was expected to be sufficient restoration of function within 12 months of onset. However, Plaintiff's argument is flawed because Social Security Ruling 82-52 only requires the ALJ to make such a finding in cases where it has been determined that claimant's impairment was of such "severity that the claimant was or is unable to engage in any [substantial gainful activity] (or any gainful activity)." *Id.* In this case, the ALJ did not find that Plaintiff's back impairment in fact rendered him unable to perform substantial gainful activity at that time (R. 30). Instead, he noted that it would be "impossible to predict" whether the conservative care recommended by Dr. Ryan would address Plaintiff's increased symptoms, or whether the herniation would resolve without surgical intervention (R. 30). The ALJ noted that, if Plaintiff's condition does not improve, a disabling back impairment "*may*" result; however, at present, the

21

ALJ found that the evidence failed to support that the Plaintiff's current level of impairment existed for the requisite 12-month durational period or that it would remain unchanged for at least 12 months. Because the ALJ did not find that the back injury rendered Plaintiff unable to perform any substantial gainful activity, this injury was not an impairment as defined under the Act; thus, the ALJ was not required to explicitly state that there was expected to be sufficient restoration of function within 12 months of the onset date so that Plaintiff could perform substantial gainful activity.

**(4) *The ALJ Did Not Commit Reversible Error by Not Explicitly Discussing Plaintiff's Obesity in His Decision.***

Plaintiff finally argues that the ALJ committed reversible error by not explicitly evaluating the effects of Plaintiff's obesity on his residual functional capacity. Social Security Ruling 02-1p requires the ALJ to consider obesity at each stage of the sequential evaluation process. However, the Seventh Circuit has consistently excused as harmless error the failure of an ALJ to explicitly address a claimant's obesity in cases where the claimant failed to allege that he was functionally limited by his obesity where the ALJ demonstrated that he reviewed the medical reports of physicians familiar with claimant's obesity. *See Prochaska v. Barnhart,* 454 F.3d. 731, 736–37 (7th Cir. 2006) (excusing as harmless error the failure of an ALJ to explicitly address claimant's obesity where claimant failed to allege that she was functionally limited by her obesity); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In the present case, Plaintiff did not identify obesity as a condition that limited his ability to work at either of the administrative hearings, nor did he allege that he was functionally limited by his obesity in any of his disability application materials. Not only did Plaintiff fail to allege he was functionally limited by his obesity, but the ALJ also reviewed and relied upon the medical reports and opinions of Dr. Mond

and Dr. Holland, both of whom were aware of Plaintiff's obesity when they rendered their opinions about Plaintiff's RFC. Thus, although the ALJ did not explicitly consider Plaintiff's obesity, it was factored indirectly into the ALJ's decision as part of those reviewing physicians' opinions. As a result, any failure to specifically address Plaintiff's obesity was harmless.

**F.  Conclusion**

The Court finds the ALJ relied on substantial evidence that supports his decision that Plaintiff is not disabled according to Social Security standards. Substantial evidence supports the ALJ's finding of RFC assessment and his assessment of Plaintiff's mental impairments. The ALJ did not err as a matter of law in concluding that Plaintiff was not disabled as a result of his back impairment nor did he err by failing to explicitly discuss Plaintiff's obesity in his decision. Therefore, the Court AFFIRMS the ALJ's decision.


SO ORDERED on September 29, 2011.


　S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE